IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION

| | | | |
|---|---|---|---|
| UNITED STATES OF AMERICA | ) | Criminal Action No. 4:10-cr-00020-1 | |
| | ) | | |
| v. | ) | | |
| | ) | | |
| LUIS ENRIQUE MARTINEZ-ROMERO, | ) | By: | Hon. Robert S. Ballou |
| Petitioner. | ) | | United States Magistrate Judge |

## REPORT AND RECOMMENDATION

This matter is before the court on petitioner Luis Enrique Martinez-Romero's motion to vacate, set aside, or correct sentence, pursuant to 28 U.S.C. § 2255. Petitioner asserts claims of ineffective assistance of counsel in violation of his Sixth Amendment rights in support of his motion. First, petitioner claims that he told counsel, immediately after the sentencing, to file an appeal, but counsel failed to note an appeal. Second, petitioner contends that he did not understand the plea agreement he accepted. Finally, petitioner claims that because he did not understand the written plea agreement, he did not know that he waived his appellate rights. Petitioner requests as relief that he be permitted to file a direct appeal with new counsel.

The presiding district judge referred this matter to me to conduct all appropriate proceedings and to provide a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). This court held an evidentiary hearing on May 21, 2012, and upon consideration of the record, the evidence presented at the evidentiary hearing, the applicable law and the argument of counsel, I conclude that petitioner's claims are without merit and **RECOMMEND** that the motion of the United States to dismiss be **GRANTED** and petitioner's § 2255 motion be **DISMISSED**.

# I.

A.     Relevant Facts of the Criminal Proceedings

On November 4, 2010, a grand jury sitting in the Western District of Virginia indicted petitioner for one count of allegedly entering the United States illegally after previously being convicted of an aggravated felony, in violation of 8 U.S.C. § 1326(a) and (b)(2). Petitioner appeared, along with counsel, before Judge Kiser on January 19, 2011 to plead guilty pursuant to a written plea agreement. The court provided a Spanish-speaking interpreter to assist petitioner with understanding the proceedings.

At the plea hearing, petitioner stated under oath that he was 42 years old and had six-years of schooling in Mexico. Petitioner admitted he did not understand any written English, but understood "a little bit" of spoken English. Petitioner stated that he had worked construction jobs in the United States primarily because he had supervisors who spoke Spanish. Petitioner denied having any physical or mental disabilities; denied taking any medication or drugs within twenty-four hours of the hearing; and had a "clear head." (Plea H'rg Tran. 8-9.) Petitioner stated that he understood the indictment and the possible penalties after reviewing it with counsel and an interpreter, but he acknowledged that he did not fully understand supervised release. (Id. 11.) Judge Kiser explained supervised release, and petitioner agreed that he understood that explanation. Id.

Judge Kiser explored with petitioner his understanding of the plea agreement and his review of the agreement with counsel. The written plea agreement is in English, but petitioner reviewed it with counsel along with the assistance of an interpreter. Petitioner understood each of the provisions of the plea agreement, signed his initials on each page and placed his signature

2

on the last page. The written agreement contained all of the promises by the United States. Furthermore, petitioner agreed that the government did not pressure him to plead guilty or to accept the terms of the plea offer. (Id. 15 - 16.)

Petitioner had "ample opportunity to meet with [counsel] about [his] case" and told counsel "everything [he] felt was important for him to know." Petitioner understood his right to counsel if he appealed his conviction or sentence and acknowledged that he had no complaints about counsel's representation. (Id. 12-13.)

The plea agreement contains a section titled, "Waiver of Constitutional Rights," which includes the waiver of "[t]he right to appeal a guilty verdict." (Plea Ag't (no. 25) 2.) Another section titled, "Waiver of Right to Appeal," reads, "By signing this agreement, I am explicitly and irrevocably directing my attorney not to file a notice of appeal."[3] (Id. 6.) The plea agreement also reads, "I understand my signature on this agreement constitutes a binding offer by me to enter into this agreement." (Id. 9.)

Judge Kiser reviewed the written plea agreement with petitioner, who acknowledged that he understood the provisions described in the section titled, "Waiver of Constitutional Rights," which includes the right to appeal a guilty verdict. Judge Kiser specifically asked:

> Judge Kiser: [D]id you understand before you entered into this Plea Agreement you would have had an absolute right to appeal your case to a higher Court, did you understand that?
> Petitioner: Yes.
> Judge Kiser: But by waiving that right in your Plea Agreement you no longer have that, do you understand that?
> Petitioner: Yes.
>                               \* \* \*

---

[3] The plea agreement contained an exception to the waiver of appeal, which read:
> Notwithstanding any other language to the contrary, I am not waiving my right to appeal or to have my attorney file a notice of appeal, as to any issue which cannot be waived, by law. . . .

(Plea Ag't 7.)

3

| | | |
|---|---|---|
| Judge Kiser: | | You no longer have the right to appeal, . . . do you understand that? |
| Petitioner: | | Yes. |
| Judge Kiser: | | And that means . . . that this Court is the end of the road for you, do you understand that? |
| Petitioner: | | Yes. |
| Judge Kiser: | | If you are dissastified, you have nowhere to turn, do you understand that? |
| Petitioner: | | Yes. |

(Plea Hr'g Tran. 20, 21.) After this long colloquy, Judge Kiser found that petitioner understood the nature and consequences of his plea and that the petitioner entered into the plea agreement knowingly and voluntarily. Judge Kiser then accepted petitioner's guilty plea to the charges in the indictment. (Id. 23.)

Petitioner returned to court on April 4, 2011 for sentencing. Judge Kiser gave petitioner the opportunity to speak on his own behalf at the sentencing hearing, but petitioner declined this request asking only that he be incarcerated in Texas. Judge Kiser imposed a sentence of, inter alia, 57 months of incarceration, which was the high end of a within-guidelines sentence. Before concluding the sentencing hearing, Judge Kiser advised petitioner:

> Mr. Martinez, you have waived your right to appeal this case. Insofar as I know, that waiver is binding. But should you decide that you want to appeal the case, that must be done within 14 days from today. And that is done by filing a notice of appeal in the Clerk's Office of this court. Should you be unable to or should your attorney be unable to do this for you, you can do it yourself by simply calling the Clerk's Office and telling the Clerk you want to note an appeal of the case. All of this can be done without any prepayment of fees or costs. And you would be entitled to court-appointed counsel.

(Sent. H'rg Tran. 9.) Petitioner did not appeal the finding of guilt or his sentence within the time permitted. This motion to vacate under § 2255 followed.

4

B.  THE EVIDENTIARY HEARING

Both petitioner and counsel testified at the evidentiary hearing. Petitioner appeared with counsel and with the benefit of two interpreters. Petitioner testified that he understood the proceedings at the evidentiary hearing and that he told the court everything he wanted to say regarding his motion to vacate, set aside or amend his sentence.

Petitioner entered the United States illegally in the 1980's as an adolescent, speaks Spanish as his native language and has only a limited understanding of English. Petitioner has worked primarily construction jobs in the United States and not learned much spoken English since he has had Spanish-speaking supervisors. Petitioner had little need to speak English until he met his wife, who only speaks Spanish 30% of the time.

Prior to any decision to plead guilty, counsel brought the proposed plea agreement with him when he conferred with petitioner at the jail where he was detained in advance of trial. Petitioner asked for an interpreter at the jail because he cannot read English, but counsel said that an interpreter would be available during court proceedings. Counsel communicated the pertinent terms of the plea agreement through a mixture of Spanish and English and told petitioner that he should sign the agreement. Petitioner claims he was nervous about signing the plea agreement, but counsel reassured him that an interpreter would be available at court and nothing could happen until petitioner signed the plea agreement.

Petitioner did not have any difficulty communicating with counsel or understanding the interpreter at the plea hearing. Petitioner remembers Judge Kiser explaining the waiver of appellate rights, including hearing Judge Kiser say, "[t]his court is the end of the road to you," and, "[i]f you are dissastified, you have nowhere to turn." Petitioner now claims that he did not

5

know what an appeal meant, but he did not tell this fact to counsel, Judge Kiser, or the probation officer who prepared the presentence report.

Petitioner testified that at the sentencing hearing, he understood that he must appeal within fourteen days, but claims that neither counsel nor his interpreter explained an appeal to him. Petitioner did not ask what an appeal meant because he did not think about it or know how to ask. Petitioner never told counsel that he did not want to plead guilty, did not understand the plea agreement, or did not understand any part of the sentencing hearing.

Petitioner plainly testified at the evidentiary hearing that he did not ask counsel to note an appeal within fourteen days of the sentencing. Rather, petitioner claims that he never understood what an appeal meant until a fellow inmate told him about an appeal after he arrived at a correctional facility in Oklahoma and more than fourteen days after Judge Kiser imposed his sentence. Petitioner then wrote letters to counsel in June and July 2011, requesting information to file an appeal.

Counsel has exclusively practiced criminal law as an assistant federal public defender for the past six years and has represented hundreds of criminal defendants, several of whom, like petitioner, primarily speak Spanish. Counsel learned and practiced Spanish for four years in college and six months in Honduras, where he effectively spoke Spanish daily with Hondurans during his military service. Counsel speaks Spanish well but has some difficulty understanding the very quick speech of native Spanish speakers. When counsel has represented other defendants who spoke Spanish but could not communicate about their criminal cases, he would have an interpreter attend the consultation. Here, however, counsel determined that he effectively communicated with petitioner by mixing English and Spanish.

6

Counsel testified that his concern regarding this case involved petitioner's record, which included three prior deportations and an aggravated-felony conviction, and which increased the maximum potential sentence to twenty years' imprisonment if a judge or jury found petitioner guilty. Counsel worried that because of petitioner's prior record, Judge Kiser would impose an above-guideline sentence if petitioner were found guilty. Consequently, counsel recommended to petitioner at their first meeting that he consider pleading guilty to the charges in consideration for the United States agreeing to recommend a "within-guidelines sentence." Counsel explained the plea agreement's pertinent parts in a mix of Spanish and English, which petitioner appeared to understand. Counsel specifically reviewed the waiver of appellate rights and recommended that petitioner sign the agreement. Petitioner never said that he did not understand what an appeal meant.

Counsel met with petitioner immediately before the plea hearing on January 10, 2011 to review the terms of the plea agreement, including the waiver of appellate rights. Petitioner never gave any indication that he did not want to accept the proposed plea agreement or not plead guilty to the charges. Similarly, petitioner never suggested that he did not understand any part of the plea agreement including the meaning of an appeal.

After the sentencing hearing, counsel told petitioner that he would not file an appeal unless directed to do so because no issues for an appeal existed. Petitioner did not direct counsel to file an appeal. Counsel never doubted that petitioner knew the meaning of an appeal.

Counsel received three letters from petitioner after the case concluded. The first letter came the day after the April 4, 2011 sentencing hearing in which petitioner said that he wanted to

7

participate in drug and alcohol programs while incarcerated. Petitioner made no mention of an appeal in this letter.

Petitioner wrote counsel on June 23, 2011, requesting materials to pursue an appeal. Counsel replied by explaining that the time to appeal had expired and that petitioner could file a 28 U.S.C. § 2255 motion if he felt counsel performed deficiently. Petitioner's girlfriend told counsel a week or two before petitioner's second letter and after the time to appeal expired that petitioner was contemplating an appeal. Counsel told the girlfriend that petitioner must be the person who instructs counsel to file an appeal.

Petitioner sent counsel a letter dated July 10, 2011, explaining that he thought he had one year to file an appeal. Petitioner requested at this time materials to file a § 2255 habeas corpus petition.

## II.

Courts and the public can presume that a defendant stands fairly and finally convicted after conviction and exhaustion, or waiver, of any right to appeal. See United States v. Frady, 456 U.S. 152, 164 (1982). Nonetheless, federal convicts in custody may attack the validity of their federal sentences via 28 U.S.C. § 2255. Section 2255 cures jurisdictional errors, constitutional violations, proceedings that resulted in a complete miscarriage of justice, or events that were inconsistent with the rudimentary demands of fair procedure. United States v. Timmreck, 441 U.S. 780, 784 (1979). Petitioner bears the burden of proving in a § 2255 motion to vacate, set aside, or correct a sentence that (1) the district court imposed a sentence in violation of the Constitution or laws of the United States; (2) the court lacked jurisdiction to

8

impose a sentence; (3) the sentence exceeded the maximum authorized by law; or (4) the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255(a).

A.       PETITIONER DID NOT DIRECT COUNSEL TO FILE AN APPEAL, AND COUNSEL DID NOT RENDER INEFFECTIVE ASSISTANCE.

"An attorney who fails to file an appeal after being instructed by his client to do so is per se ineffective."[4] United States v. Witherspoon, 231 F.3d 923, 926-27 (4th Cir. 2000) (citing Roe v. Flores-Ortega, 528 U.S. 470, 477-479 (2000)). The aggrieved defendant need only show "that . . . counsel was ineffective and . . . but for counsel's ineffectiveness, an appeal would have been filed." Id. An attorney has no obligation, however, to file a notice of appeal when a defendant explicitly instructs the attorney not to file one. Flores-Ortega, 528 U.S. at 477. An attorney must advise a client of the advantages and disadvantages of filing an appeal and make a reasonable effort to discover the defendant's wishes. Id. at 478; Witherspoon, 231 F.3d at 926.

The plea agreement explicitly directed counsel not to file an appeal, and counsel told petitioner that he would not file an appeal unless directed to do so because no appealable issue existed. Petitioner testified at the evidentiary hearing that he did not instruct anyone to file an appeal within fourteen days of the sentencing hearing. I find that petitioner did not direct counsel to file an appeal and that counsel consulted with petitioner regarding the advantages and disadvantages of filing an appeal.[5] Accordingly, I **RECOMMEND** dismissal of this claim.

---

[4] The Constitution does not confer on a criminal defendant a constitutional right to appeal. Jones v. Barnes, 463 U.S. 745, 751 (1983). However, the United States Code provides this right in 18 U.S.C. § 3742(a), and this statutory right may be waived. United States v. Wiggins, 905 F.2d 51, 53 (4th Cir. 1990).

[5] Even if counsel did not consult with petitioner about the advantages and disadvantages of filing an appeal, the facts do not support an affirmative duty to consult. Flores-Ortega, 528 U.S. at 480. Petitioner did not reasonably demonstrate to counsel that he wanted to appeal within the fourteen-day period. Petitioner never indicated an interest in appealing or showed any uncertainty about the meaning of an appeal, and petitioner repeatedly acknowledged the plea agreement's waiver of appellate rights. Petitioner also fails to describe a non-frivolous ground for appeal to establish why a rational defendant would want to appeal.

B.  PETITIONER UNDERSTOOD THE PLEA AGREEMENT AND THE WAIVER OF THE RIGHT TO APPELLATE REVIEW.

A guilty plea, and any agreement made pursuant to it, must be made knowingly, voluntarily, and intelligently. Boykin v. Alabama, 395 U.S. 238 (1969). A defendant must know the direct consequences of a guilty plea, including the actual value of any commitments made to him, in order to plead voluntarily. Mabry v. Johnson, 467 U.S. 504, 509 (1984), abrogated in unrelated part by Puckett v. United States, 556 U.S. 129, 138 n.1 (2009); United States v. White, 366 F.3d 291, 298 (4th Cir. 2004). A court must inform the defendant and ensure he understands the nature of the charges and the consequences of a guilty plea. Fed. R. Crim. P. 11; United States v. Damon, 191 F.3d 561, 564 (4th Cir. 1999). For example, a court must discuss the nature of the charges, the rights forfeited by pleading guilty, the penalties that could be imposed, and certain other terms or conditions of the plea agreement before establishing that a defendant enters a plea free from force, threats, or promises made outside the agreement. Fed. R. Crim. P. 11(b)(1)-(2).

Judge Kiser reviewed at length the plea agreement with petitioner who affirmed under oath that he understood the consequences of pleading guilty. "A defendant's solemn declarations in open court affirming a plea agreement carry a strong presumption of verity because courts must be able to rely on the defendant's statements made under oath during a properly conducted Rule 11 plea colloquy." United States v. Lemaster, 403 F.3d 216, 221 (4th Cir. 2005). Therefore, "in the absence of extraordinary circumstances, allegations in a § 2255 motion that directly contradict the petitioner's sworn statements made during a properly conducted Rule 11 colloquy are always 'palpably incredible,' and 'patently frivolous or false.'" Id. (citations omitted).

10

Defendant agreed at the guilty plea hearing that he had "ample opportunity to meet with [counsel] about [his] case"; that he told counsel "everything [he] felt was important for [counsel] to know; that he had no "complaints about the manner in which [counsel] ha[d] represented [petitioner]"; and that he understood he would have a right to counsel if he appealed. (Plea H'rg Tran. 12-13.) Petitioner further admitted that he reviewed the plea agreement with counsel through the assistance of an interpreter, that he understood its provisions; and that it reflected the entire agreement with the government made in consideration for a guilty plea. (Id. 15.) Counsel had the text of the plea agreement with him, allowing him to explain the terms and implications of pleading guilty to the charges with greater detail and meaning through a mixture of Spanish and English than if he did not possess the plea agreement.

Petitioner's claim that he did not understand what an appeal meant is not persuasive. Petitioner told Judge Kiser during the plea colloquy that he did not fully understand supervised release and received a clarification of that portion of agreement. Petitioner did not seek a similar clarification about his appellate rights or the meaning of an appeal. Petitioner repeatedly acknowledged that he understood the impact of waiving the right to appeal in response to Judge Kiser's specific questions, and petitioner never said to counsel that he did not understand the plea agreement on either of the two occasions when counsel explained it. It is incredulous for petitioner to now say that he did not know how to ask what an appeal was despite Judge Kiser's repeated discussions of appellate rights during the plea hearing, his in depth consultation with counsel and the opportunity to speak at the conclusion of the sentencing hearing.

Petitioner's solemn declarations in open court that affirmed his understanding of the plea agreement and the consequences of pleading guilty, including the waiver of appellate rights,

11

directly contradict his allegations in the § 2255 motion. Petitioner presents no extraordinary circumstances to explain why the § 2255 contentions directly contradict the statements under oath at the guilty plea hearing. I find, therefore, that petitioner's allegations in the § 2255 motion that he did not understand the plea agreement or the waiver of appellate rights are patently incredible, frivolous, and false, and **RECOMMEND** dismissal of petitioner's second and third claims.

### III.

Based on the foregoing, I find that petitioner did not direct counsel to file an appeal, counsel consulted with petitioner regarding the advantages and disadvantages of filing an appeal, and petitioner understood the pertinent terms of the plea agreement and the waiver of the right to appellate review. Accordingly, I **RECOMMEND** that the United States' motion to dismiss be granted and petitioner's § 2255 motion be dismissed.

The Clerk of Court is directed to immediately transmit the record in this case to the Honorable Jackson L. Kiser, Senior United States District Judge. Both sides are reminded that they are entitled to note any objections to this Report and Recommendation within fourteen (14) days hereof, pursuant to Rule 72(b), Fed. R. Civ. P. Any adjudication of fact or conclusion of law rendered herein by the undersigned not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1)(C) as to factual recitations or findings as well as to the conclusions reached by the undersigned may be construed by any reviewing court as a waiver of such objection.

The Clerk is further directed to send certified copies of this Report and Recommendation to counsel of record.

Entered: July 12, 2012

/s/ Robert S. Ballou

Robert S. Ballou
United States Magistrate Judge

13